## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,                       Case No. 22-cr-20519

-vs-                                   Hon. Laurie J. Michelson

D-6 ARMOND WILLIAMS,

     Defendant.

---

### DEFENDANT'S MOTION TO REVOKE ORDER OF DETENTION

Defendant Armond Williams ("Mr. Williams"), through counsel, Ben M. Gonek, moves this Court pursuant to 18 U.S.C. §3145(b), to revoke the prior Order of Detention for the reasons stated in the attached Brief in Support. Mr. Williams requests that this Court hold a hearing and, after hearing such evidence as is necessary, revoke the Order of Detention in this matter and issue an Order releasing him on bond with conditions, pending resolutions of this matter pursuant to 18 U.S.C. § 3142(c).

Pursuant to Local Rule 7.1(a), counsel has conferred with government counsel to seek the government's concurrence in this motion. The government does not concur in the relief requested.

Respectfully submitted,

*/s/ Ben M. Gonek*
BEN M. GONEK (P43716)
GONEK & BELCHER LAW, P.C.
Attorney for Def Armond Williams
14290 Northline Road
Southgate, MI 48195
(313) 963-3377
(313) 924-1284 (fax)
ben@gonekbelcherlaw.com

Dated: January 4, 2023

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,                      Case No. 22-cr-20519

-vs-                                Hon. Laurie J. Michelson

D-6 ARMOND WILLIAMS,

     Defendant.

---

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION
## TO REVOKE ORDER OF DETENTION

### INTRODUCTION

Mr. Williams is currently facing two charges, one count of Kidnapping (Conspiracy) in violation of 18 U.S.C. § 1201(a)(1) and (c), and one count of Kidnapping (Aiding and Abetting) in violation of 18 U.S.C. § 1201(a)(1), 2. On November 3, 2022, he made his initial appearance in court before Magistrate Judge Elizabeth A. Stafford and was ordered temporarily detained. Mr. Williams' arraignment on the Indictment was completed November 10, 2022, and a plea of not guilty was entered on his behalf for the two previously mentioned charges. **Exhibit A** – Detention Hearing Transcript, at 4-5. A detention hearing for Mr. Williams was

heard the same day, resulting in an Order of Detention pending trial by Magistrate

Judge Kimberly G. Altman.[1]

The Parties proceeded by "proffer". At the November 10, 2022, Detention

Hearing, Government Counsel, Ms. Jeanine Brunson, presented the Government's

Written Factual Proffer as applied to all defendants charged in the Indictment.

**Exhibit A,** at 9-16. Ms. Brunson also presented the Pretrial Services Report, which

referenced Mr. Williams' alleged involvement in gang activity; Mr. Williams'

criminal history, which showed he was on bond awaiting sentencing for a felony

weapons offense in state court and he has some warrants for failing to appear for

traffic tickets; and recommended Mr. Williams' Detention. *Id*. at 16-24. Ms.

Brunson principally relied upon the Government's Written Factual Proffer, the

Pretrial Services Report, and the presumption created by the charges at issue.

Undersigned counsel rebutted the Government's arguments, demonstrating

that Mr. Williams is not a danger to the community nor a flight risk if he were

released on bond. Counsel first argued that even when accepting the factual

allegations in the indictment as true, Mr. Williams would be the least culpable

defendant since there is no allegation that he struck or harmed the victim physically.

*Id.* at 25. Counsel further argued that the Government did not offer any evidence to

substantiate its claims of Mr. Williams' involvement in the 1125 Gang. *Id.*

---

[1] See Order of Detention, ECF No. 64, PageID 97, filed 11/10/2022.

Additionally, Counsel argued that in Mr. Williams' pending felony weapons case, he was given a personal bond, he accepted responsibility for his actions, he was considered for HYTA, and he has appeared at every proceeding. *Id.* at 25-26. Counsel argued that Mr. Williams has significant ties to the community and that conditions could be put in place to assure his appearance in court as well as minimize any danger to the community. Counsel noted that Mr. Williams lives with his mother, Jovonn Thomas, who is present in court in support of her son and willing to act as a third-party custodian if Mr. Williams is released on bond. *Id*. at 26. Counsel pointed out conditions that could be imposed that would minimize concerns regarding flight and danger to the community, such as the use of a GPS tether with house arrest and a third-party custodian. *Id*. at 26-27.

After hearing both arguments, United States Magistrate Judge Kimberly G. Altman reasoned that based on Mr. Williams' alleged involvement in gang activity, the weight of the current charges, his bond status, his warrants for failing to appear, and the conflicting information he gave pretrial services, she refused to grant pretrial release, concluding that there were no conditions or combination of conditions that would reasonably assure the safety of the community nor Mr. Williams' appearance as required. *Id*. at 29-34.

Mr. Williams now moves this Court, pursuant to 18 U.S.C § 3145(b), to revoke the prior Order of Detention. Although Magistrate Altman found no

conditions or combinations thereof that would reasonably assure either the safety of the community or Mr. Williams' appearance as required, we strongly disagree. The use of a GPS monitor and a third-party custodian can reasonably assure Mr. Williams' appearance in court and the safety of the community.

## STANDARD OF REVIEW

The Court may review the Magistrate Judge's order detaining a defendant. 18 U.S.C. § 3145(b). A review of a Magistrate Judge's detention order is a *de novo* hearing. *United States v. Hazime*, 762 F.2d 34 (6th Cir. 1985). In making its determination on a detention issue the Court is governed by the standards set forth in 18 U.S.C. § 3142(f). Under that statute, an accused is ordinarily entitled to pretrial release, with or without conditions, unless the Court finds that no set of conditions, or combination of conditions, will reasonably assure the Defendant's appearance and the safety of the community. 18 U.S.C. § 3142(f).

The Government has the ultimate burden of proof by clear and convincing evidence that the defendant presents a danger to the community and that no condition or combination of conditions could reasonably assure the safety of the defendant or of other persons and the community. *Hazime*, 762 F.2d at 37. Factors to be considered by the district court in making this determination include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and

seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

## ARGUMENT

I. **Mr. Williams should be released on bond pending trial because it has not been proven by clear and convincing evidence Mr. Williams presents a danger to the community or that use of a GPS monitor and a third-party custodian would not reasonably assure Mr. Williams' appearance in court and the safety of the community.**

Mr. Williams is charged in an Indictment with two counts:  Kidnapping (Conspiracy) in violation of 18 U.S.C. § 1201(a)(1) and (c), and Kidnapping (Aiding and Abetting) in violation of 18 U.S.C. § 1201(a)(1), 2. Any evidence provided by the Government to support Mr. Williams' detention pending trial is outweighed by favorable evidence provided by Mr. Williams, including ties to the community, familial relationships, and other types of favorable evidence.

As argued by undersigned counsel at Mr. Williams' detention hearing, Mr. Williams can establish he is not a serious risk of flight because he is a lifelong resident of the State of Michigan, he has personal and familial ties to this community, and he denied possession of international travel documents or any prior out of country travel. Further, there are conditions that can reasonably assure his appearance in court and that he will not pose a danger to the community, such as home confinement, electronic monitoring, and a third-party custodian. Each factor is discussed in depth below.

### a.     Mr. Williams is Not a Flight Risk or a Danger to the Community.

Mr. Williams, now 20 years old, was born in Detroit, Michigan and has spent his entire life living in the State of Michigan. Mr. Williams has the support of his family, as evidenced by his mother, Jovonn Thomas', appearance in court for his Detention Hearing. Upon release, Mr. Williams would return to living at his mother's home in Detroit with his two sisters, ages 22 and 11, and his sister's children, ages 5, 3, and 4 months. There are no firearms or dangerous weapons kept at this residence. Mr. Williams' father, Earnest Williams, is an additional family tie that Mr. Williams has to the State of Michigan. Mr. Williams remains in contact with these immediate family members.

There is no evidence that Mr. Williams has the resources to flee. He makes only $3,500 a month as a laborer with McClane Food Service in Plymouth, Michigan. Further, he does not possess any international travel documents, and he has never traveled outside of the United States. It is worth noting that statistics support Mr. Williams' appearance in court. In 2019, 99% of released federal defendants nationwide appeared for court as required.[2] Moreover, when release rates increase, crime and flight do not. A near-perfect compliance rate on bond is seen equally in federal districts with very high release rates and those with very low

---

[2] App. 1, AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

release rates.[3] Even in districts that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and 2% are rearrested while released.[4]

Mr. Williams does not pose a danger to the community if released. The mere fact that a defendant is charged with a crime of violence will not meet the clear and convincing standard. *United States vs. Chimurenga*, 760 F 2d 400 (CA 2) 1985; *United States vs. Ridinger*, 623 F Supp 1386 (W.D. MO 1985). Further, no evidence has been provided by the Government to substantiate its claims of Mr. Williams' involvement in the 1125 Gang.

Despite his criminal record that includes a pending felony conviction for carrying a concealed weapon, it's certainly not the lengthiest criminal history or the most serious criminal history. It should be noted that in that pending case, Mr.

---

[3] The data showing near-perfect compliance on bond is illustrated in the chart, "Federal Clients on Bond Rarely Flee or Recidivate." The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019. See App. 2, AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42. The failure-to-appear and rearrest rates for these districts were calculated using App 1, AO Table H-15. With regard to flight, the ten federal districts with the lowest release rates (average 26.00%) have an average failure-to-appear rate of 1.37%, while the ten districts with the highest release rates (average 65.58%) have an *even lower* failure-to-appear rate of 0.87%. *See* App. 1; App. 2. With regard to recidivism, the ten districts with the lowest release rates have an average rearrest rate on bond of 1.19%, while the ten districts with the highest release rates have an average rearrest rate of 2.29%. See App. 1; App. 2. The districts with the lowest release rates are, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands. *See* App. 2.

[4] *See* App. 1; App 2.

Williams was released on a personal bond, he was considered for HYTA, and he has appeared at every proceeding.

With Mr. Williams' community ties and lack of resources to flee in combination with statistical data, releasing Mr. Williams on bond is reasonable.

### b.     Conditions or a Combination of Conditions Would Reasonably Assure the Safety of the Community and Mr. Williams' Appearance

Under the Bail Reform Act, pretrial detention should only be imposed if there are no conditions or combination of conditions that would reasonably assure the appearance of the accused as required and the safety of the community. Conditions imposed by the court where pretrial release has been granted are things such as home confinement, electronic monitoring, and third-party custody. Mr. Williams has presented evidence that supports conditions that would reasonably assure his appearance and the safety of the community. At the detention hearing, undersigned counsel informed the court that Mr. Williams's mother, Jovonn Thomas, who was present at the hearing, is willing to act as a third-party custodian. Jovonn Thomas currently resides in Detroit, she is a licensed practical nurse, she has no criminal record, and she would be a positive influence on Mr. Williams if permitted to house him pending trial.

In *United States v. Bray*, this Court has imposed home confinement with a third-party custodian even when a presumption for pretrial detention existed. *United*

*States v. Bray-D9,* No. 19-20216-9, 2020 U.S. Dist. LEXIS 85975 (E.D. Mich. May 14, 2020). In *Bray*, the Court considered the characteristics of the offered third-party custodian, acknowledging her previous employment, the length of employment, her criminal record, and the safety of the home. *Id*. at *12. The Court further acknowledged the fact that this proposed custodian attended the bond hearing – evidence that they were a reliable person to release the defendant to. *Id*. Considering all these factors, the Court concluded that this person was a suitable custodian. *Id*.

Next, the Court considered whether home confinement in addition to third-party custody, notwithstanding the defendant's criminal record, could reasonably assure the safety of the community. *Id*. Recognizing that the defendant expressed a willingness to be confined in combination with the third-party custodian, the Court found that "Bray presents sufficient evidence to rebut the presumption" and "a reasonable release plan" that "will decrease the risk that Bray will endanger the community." *Id*. The Court also noted that Mr. Bray did not have a violent background, had familial and community ties, and a third-party custodian with a stable residence – all of which were factors that rebutted the presumption and led the Court to conclude that Mr. Bray "must be released pending trial." *Id*. at *12-3.

Applying the analysis of *Bray* to Mr. Williams' situation, the Court should find the same and release Mr. Williams with conditions of home confinement with third-party custody. Similarly, to Mr. Bray, Mr. Williams has familial and

community ties and a third-party custodian with a stable residence. Mr. Williams is willing to remain in Michigan, living with his mother in Detroit, pending trial.

If the Court does not feel as though home confinement and third-party custody are enough to ensure Mr. Williams' appearance and the safety of the community, Mr. Williams is willing to submit to electronic monitoring, another condition imposed by this Court when granting pretrial release.[5] This Court has repeatedly imposed electronic monitoring as a condition of bond because it has recognized that the "risk to the public can and will be mitigated by the Court imposing a period of electronic monitoring and home confinement as a condition of … supervised release." *Browning*, 2021 U.S. Dist. LEXIS 38058 at *16.

Research has also shown to support this practice. In 2018, a group of researchers conducted a study that surveyed electronic monitoring for pretrial release in federal cases.[6] The study found that when courts imposed electronic monitoring on defendants as a condition of pretrial release, there was a 66 percent reduction rate for failing to appear compared to defendants who were not electronically

---

[5] See *United States v. Monasser Mosad Omian*, No. 05-CR-80338-DT, 2006 U.S. Dist. LEXIS 83750, at *3 (E.D. Mich. Oct. 11, 2006) (defendant granted pretrial release with the conditions of remaining in the Eastern District of Michigan while placed on home confinement, which included electronic monitoring); See also *United States v. Sharma*, No. 12-20272, 2012 U.S. Dist. LEXIS 85953, at *4-5 (E.D. Mich. June 21, 2012) (defendant's bond included a tether with electronic monitoring); See also *United States v. Browning*, No. 19-20203-2, 2021 U.S. Dist. LEXIS 38058, at *17 (E.D. Mich. Mar. 2, 2021) (defendant was released pending trial and subjected to electronic monitoring).
[6] Karla Dhungana, et. al, *Electronic Monitoring for Pretrial Release: Assessing the Impact*, 82 No. 3, (2018).

monitored.[7] This is evidence that the use of electronic monitoring is a promising condition of pretrial release, and can mitigate negative impacts while improving the likelihood of court appearances and safety.[8]

## CONCLUSION

Considering Mr. Williams' familial and community ties, statistics surrounding defendant appearances in court when released on bond by both the Administrative Office of the U.S. Courts and the study conducted in 2018, in combination with Mr. Williams' willingness to be confined to his mother's home in Detroit while she acts as a third-party custodian leans in favor of revoking Mr. Williams' Order of Detention, and imposing conditions upon pretrial release.

The aforementioned information undoubtedly outweighs any contrary evidence provided by the Government and has shown that there are conditions that can reasonably assure Mr. Williams' appearance and the safety of the community. For the foregoing reasons, Mr. Williams respectfully requests that this Honorable Court revoke the Order of Detention in this matter and release him on bond with the condition of home-confinement, electronic monitoring, third-party custody, or any additional conditions this Court believes necessary.

---

[7] *Id*. at 4.
[8] *Id*. at 1.

Respectfully submitted,

*/s/ Ben M. Gonek*
BEN M. GONEK (P43716)
GONEK & BELCHER LAW, P.C.
Attorney for Def Armond Williams
14290 Northline Road
Southgate, MI 48195
(313) 963-3377
(313) 924-1284 (fax)
ben@gonekbelcherlaw.com

Dated: January 4, 2023

## <u>CERTIFICATE OF SERVICE</u>

Ben M. Gonek hereby states that on the 4th day of January 2023, he caused the forgoing Motion and Brief to be filed electronically with the United States District Court and that copies were forwarded to all counsel of record through the ECF System.

*/s/ Ben M. Gonek*
BEN M. GONEK (P43716)
